No. 112,256

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
TODD ELLISON.

SYLLABUS BY THE COURT

1.

Both the adjudication and commitment of a person under the Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*, impair that person's substantive due process right to liberty and, in turn, require procedural due process protections.

2.

Constitutionally sufficient procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of life, liberty, or property. A hearing ceases to be constitutionally meaningful if it is materially delayed and, thus, untimely.

3.

The multifactor test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to assess constitutional speedy trial rights in criminal cases provides an appropriate model for measuring the procedural due process right to a timely adjudication of a civil commitment petition under the Sexually Violent Predator Act.

4.

The *Barker* decision identified four considerations in evaluating a possible constitutional violation based on the lapse of time in bringing a criminal defendant to trial: (1) the length of delay; (2) the reasons for the delay; (3) the defendant's assertion of

the constitutional right; and (4) the prejudice to the defendant arising from the delay. Those factors are discussed in the context of a civil commitment proceeding under the Sexually Violent Predator Act.

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed July 24, 2015. Reversed and remanded with directions.

*Natalie Chalmers*, assistant solicitor general, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before MALONE, C.J., PIERRON and ATCHESON, JJ.

ATCHESON, J.: The State appeals an order of the Sedgwick County District Court dismissing its action to have Todd Ellison involuntarily committed as a sexually violent predator. The case had languished for more than 4 years as Ellison sat in the Sedgwick County jail awaiting a trial—a delay the district court held violated his constitutional rights. We agree that Ellison was constitutionally entitled to a timely adjudication of the State's petition. But the district court failed to correctly apply the legal standards for assessing Ellison's asserted constitutional deprivation. We, therefore, reverse and remand for further proceedings to allow the district court to do so.

In June 2009, the State filed a petition to commit Ellison under the Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*, and he still had not received a trial when the district court dismissed the case in March 2014. The issue before us rests solely upon the legal implications of that delay. Based on representations to us at oral argument, we understand Ellison was released from custody as a result of the district court's order of dismissal and remains free.

As provided in the Act, a person may be adjudged a sexually violent predator and indefinitely committed for treatment to a secured facility on the grounds of the Larned State Hospital or elsewhere. Based on an initial determination from a multidisciplinary team and a review committee that a convicted sex offender meets the definition of a sexually violent predator, the attorney general may file a petition to have the person committed. K.S.A. 59-29a03; K.S.A. 2014 Supp. 59-29a04. The person must then be detained for trial without bond or other means of conditional release. That's what happened to Ellison as he approached his discharge from prison for criminal convictions designated in the Act as predicate offenses.

To prevail at trial on a commitment petition, the State must prove that the individual: (1) has been convicted of or charged with a crime designated as a sexually violent offense; (2) has a mental abnormality or personality disorder; (3) is likely to commit an act of sexual violence because of that abnormality or disorder; and (4) displays serious difficulty controlling his or her dangerous behavior. *In re Care & Treatment of Williams*, 292 Kan. 96, Syl. ¶ 3, 253 P.3d 327 (2011); see K.S.A. 2014 Supp. 59-29a02(a). The commitment proceeding is a civil action rather than a criminal prosecution, since the individual is being detained for treatment of a mental condition and not as punishment for past conduct.

Both the adjudicatory process, including mandatory pretrial detention, and a commitment under the Act substantially impair a liberty interest protected in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Foucha v. Louisiana*, 504 U.S. 71, 78-80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (government effort to involuntarily commit individual because of mental illness implicates substantive liberty rights and triggers procedural due process protections); *In re Care & Treatment of Foster*, 280 Kan. 845, 854, 127 P.3d 277 (2006). In turn, the government's attempt to commit someone as a sexually violent predator must be accompanied by procedural due process protections aimed at preventing a wrongful deprivation of liberty. As outlined by

3

the United States Supreme Court, constitutionally sufficient procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). The Kansas Supreme Court similarly defines procedural due process rights. See *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009). At some point, a hearing ceases to be constitutionally "meaningful" if it is materially delayed and, thus, untimely. See *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (unreasonable delay of constitutionally required due process hearing itself becomes a constitutional violation).

Those constitutional principles apply to the State's efforts to commit Ellison and others as sexually violent predators. We perceive no particular disagreement between the parties on that much of the governing law. The issue at hand is how to measure a delay in the trial of a sexually violent predator case against those constitutional principles to determine if the rights of the respondent, here Ellison, have been violated. So framed, the matter presents a question of law wholly divorced from the evidence the State might use to prove its case.

The United States Supreme Court has developed a multifactor test to assess constitutional speedy trial rights protected in the Sixth Amendment to the United States Constitution. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Although the Sixth Amendment right pertains to criminal cases and the commitment proceedings for sexually violent predators are civil, the due process

4

considerations here bear on the deprivation of liberty, lending more than a passing similarity. Courts have drawn on the *Barker* model to analyze due process issues arising from delayed hearings in civil proceedings. See *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983); *People v. Litmon*, 162 Cal. App. 4th 383, 395-406, 76 Cal. Rptr. 3d 122 (2008) (applying the *Barker* factors in a due process claim involving undue delay in commencing a civil commitment proceeding); *Morel v. Wilkins*, 84 So. 3d 226, 246 (Fla. 2012) (assuming *Barker* test applied to a claim of delay in a civil commitment proceeding and deciding case on that basis); *In re Lamb*, 368 Mass. 491, 500, 334 N.E.2d 28 (1975) (recognizing speedy trial cases, including *Barker*, as relevant to timeliness of commitment hearing under Massachusetts law for sexually dangerous person).

In *Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, the Court found the *Barker* model for measuring prompt adjudication to be wholly apt in a civil forfeiture action involving a government taking of property. The Court explained that "the Fifth Amendment claim here—which challenges only the length of time between the seizure and the initiation of the forfeiture trial—mirrors the concern of undue delay encompassed in the right to a speedy trial." 461 U.S. at 564. In turn, the Court found: "The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay here violated the due process right to be heard at a meaningful time." 461 U.S. at 564.

We, therefore, agree with the district court's decision to apply the *Barker* model to determine whether the delay in this case deprived Ellison of constitutional due process. But we part ways with the district court in how that assessment should be performed. The *Barker* Court identified four considerations in evaluating the lapse of time in bringing a criminal defendant to trial: (1) the length of delay; (2) the reasons for the delay; (3) the defendant's assertion of the constitutional right; and (4) the prejudice to the defendant

arising from the delay. 407 U.S. at 530; see *State v. Weaver*, 276 Kan. 504, 506, 78 P.3d 397 (2003) (applying *Barker* to Sixth Amendment speedy trial challenge). The factors should not be applied in a way that isolates each from the others or that treats them as separate boxes on a scorecard to be tallied to reach a result. They ought to be considered holistically to gauge the impact of the relevant circumstances in a given case. *Barker*, 407 U.S. at 530, 533; *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004); *State v. Waldrup*, 46 Kan. App. 2d 656, 679, 263 P.3d 867 (2011). Thus, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522. The *Barker* Court acknowledged the list of factors to be nonexclusive. *Barker*, 407 U.S. at 530.

As discussed in *Barker* and since applied elsewhere, the length of delay operates, in part, as a gatekeeper to the remaining factors. That is, a party, in light of the circumstances of his or her case, must show that the delay may be considered likely or presumptively prejudicial. *Barker*, 407 U.S. at 530-31; *Waldrup*, 46 Kan. App. 2d at 679. We suppose that gatekeeping principle to be applicable in a civil commitment proceeding. The requirement for something more than a minimal delay prevents what otherwise might be a wave of motions claiming constitutional error based on a matter of days or weeks. But a sufficient "triggering" delay abides no strict measurement in months or years imposed across a range of cases. See *State v. Hayden*, 281 Kan. 112, 128, 130 P.3d 24 (2006); *Weaver*, 276 Kan. at 509-10; *Waldrup*, 46 Kan. App. 2d at 679. As the *Barker* Court pointed out, a delay that might be tolerable for a "serious, complex conspiracy charge" would be wholly unacceptable for "an ordinary street crime." *Barker*, 407 U.S. at 530-31. We see no bright-line measure for presumptive prejudice in a civil action for involuntary commitment.

In the district court, the State conceded about 325 days of the delay of well over 4 years could be attributed to its requests for continuances or other pretrial maneuverings. The district court roughly assessed just over 500 days to the State. Everybody concedes

the delay attributable to the State, even limited by its own admission, was presumptively prejudicial, allowing Ellison to pass through the gate for a full evaluation of the constitutional implications of his wait for a trial. We agree.

The district court, however, seemed to treat that presumptive prejudice alone as a legally sufficient ground to grant Ellison relief. But it simply triggers a full judicial review of the circumstances to assess the claimed constitutional deprivation.

The district court did not make findings addressing the *Barker* factors with any particularity and seemed to more or less rest its decision on the overall length of the delay without considering the reasons for the glacial pace of the litigation or the prejudice to Ellison. Absent findings on those factors, we cannot affirm the district court's decision that the State violated Ellison's due process rights. Nor can we say the district court erred in its ultimate conclusion. We, therefore, must remand for further proceedings entailing, at the very least, more specific findings tailored to the *Barker* considerations.

On remand, the district court should undertake a more particularized analysis of how much of the overall delay should be attributed to the State's conduct and how much to Ellison, acting through his lawyers. We recognize the task may be a challenging one given the length of the delay and what may be each party's arguments for deflecting responsibility to the other. By the same token, however, the district court need not arrive at a formal accounting ascribing each day of the 4-year delay to either the State or Ellison. What the law requires is a reasonable allocation based on the available evidence. We leave to the district court any decision about entertaining additional written or oral argument or reopening the evidentiary record.

As a general matter, the delay caused by a court-ordered continuance ought to be attributed to the party requesting the additional time. *Weaver*, 276 Kan. at 508 (time attributable to defense continuances given limited significance in constitutional speedy

7

trial determination); *United States v. Erenas-Luna*, 560 F.3d 772, 778 (8th Cir. 2009) (same). Continuances Ellison sought to prepare for trial or to accommodate his lawyer's schedule ought not be attributed to the State. Those delays would have been for his benefit. But that wouldn't invariably be true. If, for example, the State produced documents long after they should have been provided to Ellison, Ellison's request for some reasonable extension to review them might fairly be attributed in whole or in part to the State. Those considerations spill over into the second *Barker* factor—the reasons for the delay—and illustrate the seamlessness of the ultimate constitutional determination.

When the district court considered Ellison's motion for release, the trial in a sexually violent predator commitment was to be held no later than 60 days after a probable cause determination on the petition, absent continuances granted for good cause. K.S.A. 2014 Supp. 59-29a06(a). The 60-day limitation operated simply as a benchmark or goal. The failure to meet that schedule did not require dismissal of the action. K.S.A. 2014 Supp. 59-29a06(f). During the 2015 session, the Kansas Legislature amended K.S.A. 59-20a06 to remove any timeframe for holding the trial. L. 2015, ch. 95, sec. 6. The change does not curtail Ellison's due process right to a timely adjudication of the commitment petition. But the amendment undercuts a notion that the 60-day period now reflects a legislative determination as to what might be considered presumptively reasonable to the extent that might bear on the constitutional issue. *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (forum state's unusually long statute of limitations did not deprive nonresident magazine publisher of due process protections when publisher would otherwise be subject to personal jurisdiction in forum state for alleged libel of nonresident individual).

As to reasons for the delay, the State may not get a pass by arguing its lawyers simply couldn't devote sufficient time to this case because of other specific cases or the overall press of the business on the attorney general's office. That is a matter of prioritizing and allocating personnel and resources. Here, Ellison had been detained

8

without bond to determine whether he posed a sufficient risk of engaging in sexually violent acts in the future that he should be involuntarily committed for treatment. The issue was not whether Ellison had committed a crime for which he should be punished but whether he suffered from a mental aberration that left him unable to control specific antisocial impulses to engage in specific kinds of especially harmful acts. The State cannot give that sort of proceeding a low priority while the subject sits in jail awaiting a final disposition.

The third *Barker* factor takes account of when the individual expressly asserts his or her constitutional right to a timely adjudication. The district court found Ellison did so in mid-2012. On June 21, 2012, Ellison filed a motion in this case for immediate release in part because he had been held for more than 3 years without a trial. On July 23, Ellison filed a petition for habeas corpus under K.S.A. 60-1501 as an original action in the Kansas Supreme Court. In that action filed against the State, he asserted, in part, he had been detained without a trial in a sexually violent predator commitment proceeding and sought release. The gist of Ellison's complaints lodged in the motion and the habeas corpus petition afforded the State fair notice that he wanted a prompt determination of the sexually violent predator case or its dismissal so he could be released from custody. The Kansas Supreme Court dismissed the habeas corpus petition by order in June 2013.

After Ellison asserted his due process right to a timely adjudication, any delays attributable to the State should be weighed heavily against the State and in his favor unless he affirmatively agreed to a specific continuance or extension. The delays before Ellison asserted his right to a prompt disposition of the case have less significance in the constitutional analysis. They should not, however, be ignored. To do so would impermissibly attribute to Ellison a backhanded waiver of his due process right. See *Barker*, 407 U.S. at 525 (Court declines to presume waiver of Sixth Amendment speedy trial right from inaction); 407 U.S. at 528 (rejecting a "rule that a defendant who fails to demand a speedy trial forever waives his right"). But, as we have indicated, Ellison

9

cannot now complain about continuances the district court granted the State to which he agreed. Agreeing to a particular extension or delay is inconsistent with the assertion of a right to timely adjudication.

The fourth *Barker* factor looks at prejudice to the individual resulting from the delays attributable to the State. The Court identified several types of prejudice in a criminal prosecution: oppressive pretrial incarceration; a defendant's anxiety and concern sparked by the ongoing proceedings; and possible impairment of the defense. *Barker*, 407 U.S. at 532; *State v. Rivera*, 277 Kan. 109, 118, 83 P.3d 169 (2004). Those forms of prejudice are applicable in an action to involuntarily commit a person as a sexually violent predator. The emotional impact on Ellison is fact specific, so we don't elaborate on that consideration. Likewise, how the extended delay may have impaired Ellison's ability to marshal evidence or to otherwise oppose the petition is a fact-based determination for the district court's evaluation.

The conditions of Ellison's pretrial detention present some considerations different from those in criminal cases. First, the conditions of confinement in a jail or prison are more restrictive than those imposed on someone committed for treatment as a sexually violent predator. So the length of pretrial detention in these cases should be minimized to the extent reasonably possible. In criminal cases, a convicted defendant typically will receive credit against a sentence of imprisonment for the time spent in jail awaiting trial. There is no comparable benefit to someone adjudicated a sexually violent predator. The individual is detained for treatment and, thus, will be held for an indeterminate period theoretically dependent on progress made in the therapeutic regimen. The individual's pretrial detention is effectively lost for that purpose. No treatment is provided in jail— both because the facility isn't staffed to do so and because the individual hasn't been adjudicated a sexually violent predator. Those circumstances render pretrial confinement more oppressive in a civil commitment proceeding than in a criminal prosecution and weigh against extended delays in adjudicating a commitment petition.

10

Apart from our discussion of the *Barker* factors, we reject the State's argument that because Ellison opposed its motion to the district court for additional findings of fact, we should, therefore, infer facts adverse to him. The State cites no authority for such a result, and we find the suggested remedy gratuitous. More naturally in that situation, we ought not invoke against the State the presumption that a district court has made all necessary findings supporting its conclusions in the absence of a party's objection, even if some findings have not been stated on the record. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

In conclusion, we hold the district court did not render adequate findings, taking account of the *Barker* factors, to support its determination that Ellison was deprived of a due process right to a timely adjudication of the State's petition to involuntarily commit him as a sexually violent predator. We, therefore, reverse the order dismissing the petition and remand for further proceedings consistent with this decision.