NOT DESIGNATED FOR PUBLICATION

No. 115,148

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of

JAMES D. KRISTEK.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed October 21, 2016. Affirmed.

*Carl F.A. Maughan* and *Sean M.A. Hatfield*, of Maughan Law Group LC, of Wichita, for appellant.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*: James D. Kristek appeals the jury's determination he is a sexually violent predator raising three issues on appeal: (1) the sufficiency of the evidence, (2) the long delay in bringing the case to trial, and (3) cumulative error. In a light most favorable to the State, the record reflects more than sufficient evidence to support the jury verdict beyond a reasonable doubt. The record does reflect a long delay before the jury trial occurred, but the record also reflects the delay between February 2012 and July 2015 was caused by Kristek for multiple reasons as he prepared for the jury trial. We find no error and affirm.

1

FACTS

On September 13, 2011, the State filed a petition pursuant to the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*, alleging Kristek may meet the criteria of a sexually violent predator. The district court found there was probable cause to believe Kristek was a sexually violent predator and set the jury trial for February 23, 2012.

On May 15, 2012, an order appointing a psychologist to conduct an independent evaluation was filed, and the trial date was continued to May 29, 2012. Kristek's counsel continued the trial four more times, to October 22, 2012, as he was having difficulty in obtaining the expert evaluation and report.

On October 12, 2012, Kristek filed a pro se motion for ineffective assistance of counsel. He alleged his trial counsel failed to act with reasonable diligence and promptness. The motion was set for hearing on October 26, 2012, but was continued until November 2, 2012. The hearing on the motion was continued and was ultimately heard on January 25, 2013. With the pending motion, Kristek's trial date was also continued until after the pro se motion was resolved.

At the hearing on January 25, 2013, Kristek argued his trial counsel was not communicating with him and also argued he had "been here 11 months and I should have had speedy trial by now." Kristek also indicated he had not been seen by an independent evaluator yet. Although the district court expressed concern over the length of time the case had been ongoing, the district court ultimately denied Kristek's motion.

In March 2013, Kristek filed a second pro se motion alleging ineffective assistance of counsel and the district court appointed Kristek new counsel. With the appointment of new counsel, Kristek's trial was continued.

In July 2013, the district court entered another order for an independent examination and appointed a psychologist to examine Kristek. In August 2013, Kristek filed a pro se motion for discovery. His trial was continued to October and then again to February 10, 2014. On February 10, 2014, the trial was continued because Kristek's counsel had "just recently found a doctor to evaluate the Respondent and therefore need[ed] additional time to get the evaluation completed."

On March 20, 2014, the district court ordered another independent examination and appointed Dr. Robert Barnett to examine Kristek. It also continued Kristek's trial date per his counsel's request. Kristek's trial was continued three additional times while waiting for Dr. Barnett's examination and report. His trial was then continued for further discovery.

On December 23, 2014, Kristek sent the district court a letter alleging his speedy trial rights had been violated since he had been in jail awaiting his trial for 39 months. He alleged he was unaware his trial had been continued, he was never informed it had been continued, and he was never present when his case was continued.

On March 20, 2015, the district court continued Kristek's trial to July 13, 2015. Between February 23, 2012, and July 13, 2015, when his trial finally occurred, Kristek's case was continued 21 times. The record indicates each continuance was attributed to Kristek's counsel as they tried to obtain an expert evaluation and report or found the need to conduct additional discovery as the case developed.

On July 2, 2015, Kristek filed a petition for immediate release, arguing his speedy trial rights were violated. At the hearing on the petition for immediate release, the district court found the proceedings were civil in nature and the statutory provisions of the Kansas Code of Criminal Procedure did not apply. Further, the district court found the

3

continuances were caused by Kristek or his counsel and were in his best interest. The district court denied Kristek's petition.

At trial, the State presented evidence Kristek was convicted of four counts of aggravated indecent liberties with a child under the age of 14 and one count of attempted aggravated indecent liberties. Kristek testified he completed Sexual Offender Treatment Program (SOTP) training—usually an 18-month program—in 8 months but received a poor prognosis. Kristek testified SOTP training was "a joke." He also testified regarding his victims and what attracted him to his victims, often indicating he did not know what attracted him to his victims.

Dr. Stephanie Adam evaluated Kristek for the State. She testified about the various tests she administered, including the Wide Range Achievement Test, the Aggression Questionnaire, the Minnesota Multiphasic Personality Inventory, the Trauma Symptom Inventory, the Millon Clinical Multiaxial Inventory, the Beck Hopelessness Scale, and the Beck Depression Inventory. The tests are all peer reviewed and widely accepted by psychologists.

Dr. Adam testified that using clinical judgment, standing alone, was not a widely accepted method of determining whether someone has a mental abnormality or evaluating the risk that someone would reoffend. Dr. Adam also administered the Static-99R and the Static-2002R to determine whether Kristek posed a risk of reoffending. Both the Static-99R and the 2002R are peer reviewed and widely accepted by other psychologists.

Dr. Adam determined Kristek scored a 4 on the Static-99R, which placed him in the moderate-high risk category to sexually reoffend. Dr. Adam admitted there was some concern about the reliability of the Static-99R but indicated it was widely used. Kristek scored a 5 on the Static-2002R, which equates to a moderate risk of reoffending

4

compared to other sex offenders. Dr. Adam testified she believed the Static-99R and the Static-2002R underestimated an individual's likelihood to reoffend because it only measures individuals who have been later caught and charged with another crime.

Dr. Adam diagnosed Kristek with pedophilia, sexually attracted to both genders, nonexclusive type, and a personality disorder not otherwise specified with narcissistic features. She believed Kristek's pedophilia predisposed him to commit repeat acts of sexual violence and Kristek was a menace to the health and safety of others. In her opinion, Kristek was unable to control his behavior.

Dr. Jane Kohrs also performed an evaluation of Kristek at the request of the State. Dr. Kohrs also administered a Static-99R to evaluate Kristek and also scored him as a 4. She also noted other risk factors, including emotional identification with children, sexual preoccupations, intimacy deficits, and having a personality disorder, that increased his risk of engaging in repeat acts of sexual violence. Dr. Kohrs diagnosed Kristek with pedophilia, nonexclusive type, and a personality disorder not otherwise specified with dependent features. Like Dr. Adam, Dr. Kohrs indicated she believed Kristek's pedophilia made him predisposed to engage in repeat acts of sexual violence and he was unable to control his behavior.

After the State rested, Kristek called his expert witness, Dr. Robert Barnett, who testified he reviewed Dr. Adam's and Dr. Kohrs' reports as well as some documents Kristek provided. Though he conducted some testing, Dr. Barnett did not feel the need to repeat or replicate testing that had already been done. Dr. Barnett disagreed Kristek was a pedophile and testified:

> "Well, pedophilia is a really dire diagnosis. In my experience I've evaluated a lot of pedophiles who very much established as such. There's a lot of clinical lore and a lot of clinical information that's not necessarily part of the definition in the DSM. I should note

that the DSM in the preface to it states very clearly that it should not be—it's not intended to replace clinical judgment, so I think I'm on firm footing when I say clinical judgment is very important in these cases.

"Pedophiles, the pedophiles that I've known have been very outspoken about their interest in children and their intent to return to a life of pursuing children and having sex with them once they're released from custody. They almost always have large collections of child pornography. They almost always work or pursue hobbies in situations that would place them in close proximity to children. Now, I acknowledge that in some cases and some ways Mr. Kristek has some of these characteristics, but he certainly doesn't have the full panoply and most of the characteristics that we're talking about occurred a number of years ago."

Dr. Barnett admitted the Static-99R was widely used but indicated use of the Static-99R is controversial because it is good at predicting group behavior but not an individual's behavior. Dr. Barnett also pointed out that a moderate-high risk of reoffending indicated somewhere between an 8% and 18% chance of reoffending. Dr. Barnett testified he did not believe Kristek met the legal definition of a sexually violent predator because he did not have a mental abnormality or personality disorder and Kristek was capable of controlling his behavior.

The jury found Kristek to be a sexually violent predator subject to involuntary commitment. Kristek timely appealed.

ANALYSIS

*Kristek is a sexually violent predator.*

In order to establish an individual as a sexually violent predator, the State must prove four elements:

"(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the

6

individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior. See K.S.A. 2010 Supp. 59-29a02(a); [*Kansas v.*] *Crane*, 534 U.S. [407,] 413, [122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)]; PIK Civ. 4th 130.20." *In re Care & Treatment of Williams*, 292 Kan. 96, 106, 253 P.3d 327 (2011).

When the sufficiency of evidence is challenged in a sexually violent predator case, the appellate court

"asks whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is a sexually violent predator. [Citations omitted.] As an appellate court, we will not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. [Citations omitted.]" *In re Williams*, 292 Kan. at 104.

Kristek argues no reasonable factfinder could have found beyond a reasonable doubt he was a sexually violent predator. Specifically, he argues "most of the evidence offered by the State was based on questionable expert testimony that was brought into question by Mr. Kristek's own expert witness, who was equally qualified." Thus, Kristek is asking this court to redetermine whether the State's experts or Kristek's expert was more credible and to resolve the conflict in the evidence. However, making credibility determinations and resolving conflicts in the evidence is the jury's duty, not the court's. *In re Williams*, 292 Kan. at 104.

Further, when all of the evidence is viewed in the light most favorable to the State, a rational factfinder could reasonably find the State met its burden to demonstrate beyond a reasonable doubt that Kristek was a sexually violent predator. The record reflects:

7

- Kristek admitted to being convicted of four counts of aggravated indecent liberties with a child under the age of 14 and one count of attempted aggravated indecent liberties;
- Both Dr. Adam and Dr. Kohrs testified they diagnosed Kristek with pedophilia;
- Dr. Adam and Dr. Kohrs testified Kristek was likely to reoffend; and
- Both Dr. Adam and Dr. Kohrs testified Kristek was unable to control his dangerous behavior.

The jury's verdict finding Kristek was a sexually violent predator beyond a reasonable doubt is supported by the evidence in the record.

*No speedy trial violations*

Kristek alleges the district court erred when it denied his motion to dismiss for speedy trial violations. He argues his constitutional speedy trial rights and his procedural due process rights were violated. The State argues the district court correctly denied Kristek's motion to dismiss because the delay between the filing of the State's petition and trial was all attributable to Kristek.

Sexually violent predator commitment proceedings are civil actions, not criminal proceedings. See *Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). As such, the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights do not apply. See U.S. Const. amend. VI ("In all criminal prosecutions . . . ."); Kan. Const. Bill of Rights, § 10 ("In all prosecutions . . ."). This is a civil action; thus, Kristek had no statutory or constitutional right to be present when the many continuances were requested by his two attorneys.

Although a sexually violent predator commitment proceeding is a civil action, it substantially impairs a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *In re Care and Treatment of Ellison*, 51 Kan. App. 2d 751, 753, 359 P.3d 1063 (2015), *rev. granted* February 22, 2016. As a result, commitment proceedings must be accompanied by procedural due process protections to prevent a wrongful deprivation of liberty. 51 Kan. App. 2d at 753. To satisfy procedural due process, a person must "be afforded a right to be heard in a meaningful way before being deprived of 'life, liberty, or property.'" 51 Kan. App. 2d at 753 (quoting U.S. Const. amend. XIV, § 1). A hearing is not "constitutionally 'meaningful' if it is materially delayed and, thus, untimely." 51 Kan. App. 2d at 753-54, (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547, 105 S. Ct. 1487, 84 L. Ed. 2d 494 [1985]).

The multifactor test to assess speedy trial rights found in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), applies to determine whether procedural due process was satisfied in sexually violent predator commitment proceedings. *In re Ellison*, 51 Kan. App. 2d at 755. *Barker* identified four factors to evaluate the delay in bringing a defendant to trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. None of the factors, standing alone, is sufficient for finding a deprivation of the defendant's right—the factors must be considered together along with any other relevant circumstances. 407 U.S. at 533.

In *In re Ellison*, the district court granted Ellison relief after considering only the length of the delay was attributable to the State while Ellison was in jail awaiting the trial. The district court did not address any of the other *Barker* factors with particularity. On appeal, the panel remanded the case to the district court, stating:

9

"Absent findings on those factors, we cannot affirm the district court's decision that the State violated Ellison's due process rights. Nor can we say the district court erred in its ultimate conclusion. We, therefore, must remand for further proceedings entailing, at the very least, more specific findings tailored to the *Barker* considerations." *In re Ellison*, 51 Kan. App. 2d at 756.

Here, the district court did not mention *Barker* or specifically discuss the *Barker* factors in denying Kristek's motion to dismiss. While it did not address the length of the delay or Kristek's assertion of his right to a timely adjudication, the district court did touch upon the reason for the delay and the prejudice to the defendant. The district court found, in relevant part:

"To the extent that there is a constitutional analysis required, the Court would find that these matters, these continuances have not been at the request of the State. They have been at the request of Mr. Kristek or his counsel. They have been evaluated by the Court. In many cases—well, I won't say in many cases. In some cases over the objection of the State of Kansas. And in some cases the requests were prejudicial to the State of Kansas, but, nevertheless, the Court granted them anyway because the Court determined at the time the requests were made that they were in the best interest of Mr. Kristek and in the best interest of having an error-free trial."

In considering Kristek's motion to dismiss, the district court did not make specific findings regarding each *Barker* factor, but its analysis is sufficiently close. Remand is unnecessary because the record clearly shows Kristek was not entitled to relief as all of the delays and continuances were caused by him and correctly charged to him.

*Length and reason for delay*

Here, the delay between Kristek's probable cause hearing and his commitment trial was more than 3 years and 9 months. However, the delay caused by a court-ordered

continuance should generally be attributed to the party requesting the continuance. *In re Ellison*, 51 Kan. App. 2d at 757.

In this case, the delay of more than 3 years is entirely attributable to Kristek. Most of the continuances are not included in the record. However, according to the record on appeal, Kristek's counsel requested every continuance between his probable cause hearing and his actual jury trial. From February 2012 until June 2014, Kristek's counsel repeatedly continued the trial dates to secure an independent evaluation and an expert report. In September 2014, Kristek's counsel prepared an agreed order continuing the trial date so the parties could conduct further discovery. Kristek's counsel—with Kristek present and without objection—continued the trial from April 2015 to July 13, 2015, so Dr. Barnett would be available to testify in person.

Kristek argues many of the continuances were done without his knowledge and were not communicated to him, but he has failed to provide any authority requiring his knowledge or presence when the request was made. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

*Assertion of speedy trial rights*

Kristek first asserted a statutory speedy trial right in a pro se motion to dismiss on April 11, 2012, arguing he had to be brought to trial within 60 days of his probable cause determination. Kristek again asserted a statutory speedy trial right in a pro se motion to dismiss on June 21, 2012. Kristek asserted statutory speedy trial rights in these motions, not a procedural due process right to be heard in a meaningful time. Kristek asserted a constitutional speedy trial right in letters to the court filed December 23, 2014, and May

11

20, 2015. Kristek asserted a due process violation in his petition for release filed on July 2, 2015.

While delays prior to the assertion of a due process right to timely adjudication cannot be ignored, the delay has less significance in the constitutional analysis. *In re Ellison*, 51 Kan. App. 2d at 758-59. After an offender asserts his due process right to timely adjudication, any delays attributable to the State should be weighed heavily against the State and in the offender's favor. 51 Kan. App. 2d at 758. As discussed above, the State requested none of the continuances and actually objected to some of them. Thus, the delay cannot weigh heavily against the State in this analysis.

*Prejudice*

Prejudice should be assessed in light of a defendant's interest in preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. The most serious interest is in limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

Kristek argues the delay was presumptively prejudicial because he has been "'held in prison, shackled in public and subject to hardships with no convictions, no sentence and with limited access to mental health treatment, all awaiting a determination of whether he is a mentally ill person who requires ongoing treatment'" for more than 3-1/2 years. Without discounting the seriousness of spending 3-1/2 years in jail, the delay was at Kristek's request and for his benefit. The delay allowed Kristek to secure an independent evaluation, receive an expert's report, and conduct extensive discovery in preparation for the jury trial.

The district court did not deny Kristek a meaningful hearing within a meaningful time.

*No cumulative error*

As a final point, Kristek asserts he was denied due process and a fair trial due to cumulative error. However, the court will find no cumulative error when the record fails to support the errors the defendant raises on appeal. *State v. Marshall,* 303 Kan. 438, 451, 362 P.3d 587 (2015). The record indicates there was sufficient evidence for a rational factfinder to conclude the State met its burden to prove Kristek was a sexually violent predator beyond a reasonable doubt. Further, the record indicates the delay between Kristek's probable cause determination and hearing were caused by Kristek or his attorneys. With no errors, there cannot be cumulative error. Kristek's argument fails.

Affirmed.