NOT DESIGNATED FOR PUBLICATION

No. 116,599

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIMOTHY J. BURCH,
*Appellant*,

v.

DON ASH, Wyandotte County Sheriff,
*Appellee*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed May 12, 2017. Affirmed.

*Timothy J. Burch*, appellant pro se.

*Jane A. Wilson*, assistant counsel, legal department of Unified Government of Wyandotte County/Kansas City, Kansas, for appellee.


Before POWELL, P.J., ATCHESON, J., and FAIRCHILD, S.J.

*Per Curiam*:  Timothy J. Burch, an adjudicated sexually violent predator (SVP), filed a petition for a writ of habeas corpus pursuant to K.S.A. 2016 Supp. 60-1501 on May 15, 2015, while housed in Wyandotte County Jail (WCJ) during his annual transitional release hearing. In his petition, Burch asked the court to declare that the Wyandotte County Sheriff violated his rights by housing him in WCJ during his annual review proceedings, but he did not request his release from the county jail. The district court summarily denied the petition. We affirm the district court's denial of the petition.

1

FACTUAL AND PROCEDURAL BACKGROUND

As an SVP, Burch is civilly committed to the custody of the Secretary for Aging and Disability Services pursuant to the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq.* Burch stipulated to having been found to be a SVP on May 30, 2002, after which he was committed for care and treatment in accordance with the KSVPA. *In re Care & Treatment of Burch*, No. 102,468, 2010 WL 3324271 (Kan. App. 2010), *aff'd* 296 Kan. 215, 291 P.3d 78 (2012).

After receiving the annual report of his mental evaluation, Burch filed a petition in April 2015, seeking transitional release over the secretary's objection. The district court set a pretrial hearing, scheduled a hearing on the petition for release, and ordered that Burch be transported from Larned State Hospital (LSH) to WCJ on April 23, 2015, so he could attend the pretrial hearing. On April 28, 2015, Burch was transported back to LSH. On Friday, May 15, the district court again ordered the sheriff to transport Burch from LSH to WCJ in anticipation of his transitional release jury trial scheduled for 9 a.m. on Monday, May 18. At the conclusion of the trial, the jury found that Burch was not safe for transitional release, and the sheriff transported Burch back to LSH on or about May 26.

Burch acknowledged that he was taken to the WCJ during the court proceedings associated with his annual SVP reviews. He claimed that during his confinement he was always subjected to the exact same conditions of jail confinement as the criminal inmates. He also contended that he was placed in seclusion, was denied access to his own clothes and toiletries, and that the phones in the jail did not work properly. Burch further claimed that in 2012 he was held in the WCJ for several days after his annual review hearing was completed before the sheriff returned him LSH.

Burch filed a petition for a writ of habeas corpus on May 15, 2015, while housed in WCJ for his annual transitional release trial. In his petition, Burch requested a judicial declaration that the Wyandotte County Sheriff violated his rights by housing him in the WCJ during his annual proceedings. He did not request his release from jail.

The district court summarily denied Burch's petition on August 24, 2016, after finding that Burch was temporarily housed by the sheriff for the "sole and limited purpose of allowing [Burch] to be present at hearings he requested to appear for." The district court concluded that Burch's allegations did not "rise to the level of shocking and intolerable conduct, nor is there continuing mistreatment of a constitutional stature."

Burch filed this timely appeal, requesting a reversal and a remand for the limited purpose of providing him the relief he requested in his petition for writ of habeas corpus. Thus, he is asking that this court order the trial court to declare that the sheriff violated his rights and order the sheriff not to do it again.

DID THE DISTRICT COURT ERR IN SUMMARILY DENYING BURCH'S PETITION?

To state a claim for relief under K.S.A. 2016 Supp. 60-1501, a petition must allege

"shocking and intolerable conduct or continuing mistreatment of a constitutional stature. [Citation omitted.] Summary dismissal is appropriate if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists. [Citations omitted.] An appellate court reviews a summary dismissal de novo." *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009).

See K.S.A. 2016 Supp. 60-1503(a).

3

A.    *Statutory arguments*

Burch first argues that the legislature intended for individuals civilly confined under the KSVPA to have the same rights not to be housed in a county jail as other persons confined for care and treatment. In support of this argument, he cites a string of statutes related to the care and treatment of mentally ill persons and another string of statutes related to county sheriffs. Burch points out that the following statutes permit the court to detain an individual in the county jail during specific occasions:  (1) K.S.A. 2016 Supp. 59-29a05(a)(1) (pending determination that a person is an SVP); (2) K.S.A. 2016 Supp. 59-29a05(d) (during the pendency of an initial commitment trial); (3) K.S.A. 2016 Supp. 59-29a07(f) (during the period between a mistrial of the sexual predator trial and date of a new trial); and (4) K.S.A. 2016 Supp. 59-29a07(d) (after a person's arrest for a parole revocation violation or following any arrest or conviction for a criminal offense of any nature). Burch contends that the legislature intended to limit the county sheriffs' authority to confine SVPs in county jails to these instances alone and prohibit county sheriffs from housing SVPs in county jails under any other circumstances. He cites only those statutes and provides no other analysis in support of his conclusion regarding this legislative intent argument. We do not find that Burch's position is supported by the cited statutes.

Burch argues that he was denied his statutory rights in violation of the liberty interests created by state law when the sheriff housed him in the county jail for his transitional release hearing. Burch concludes: "After a review through determination of legislative intent Petitioner contends the entire Sexual Predator Act clearly establishes that he should not have been placed in County Jail." Burch provides no analysis beyond this conclusory statement. A point raised incidentally in a brief and not argued therein is deemed waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

4

For his second statutory argument, Burch contends that the sheriff's detention of him in the county jail imposed significant hardships on him and violated his constitutional rights. He merely reiterates his previous argument that it is only under certain circumstances that the KSVPA gives county sheriffs the authority to confine SVPs in county jails. He claims that by looking to the provisions of K.S.A. 59-29a09, we find statutes specifically prohibiting his placement in the county jail. Where Burch does refer to caselaw to support this position, he uses cases that are either inapposite or do not stand for the principles that he attributes to them.

Burch exclusively relies on *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), to support his contention that the KSVPA can only be constitutional if it provides the same rights to SVPs as it does to all others civilly committed in Kansas. However, Burch misstates the holding in *Hendricks*, which ultimately concluded that KSVPA does not violate due process. *Hendricks*, 521 U.S. at 368-69; see *In re Care & Treatment of Hay*, 263 Kan. 822, 831-32, 953 P.2d 666 (1998). He cites no other authority to support this argument.

He also argues: "It is clear the State of Kansas has statutorily granted all persons who are civilly committed, including persons committed under the Kansas Sexually Violent Predator Act, the right not to be housed in county jail." He cites statutes without analysis and attempts to provide support for his argument regarding liberty interests by citing two cases. First, he cites *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), but the issues there concerned prison regulations. Next, he cites *In re Care & Treatment of Ellison*, 51 Kan. App. 2d 751, 760, 359 P.3d 1063 (2015), *rev'd* 305 Kan. 519, 385 P.3d 15 (2016), but there the issue was the violation of Ellison's due process rights to a speedy trial. Neither of these cases address Burch's temporary housing in WCJ to permit his presence at his transitional release trial.

5

B.    *Constitutional arguments*

Burch argues that when he was housed in the county jail prior to his transitional release trial, his constitutional rights were violated. Specifically, he argues the KSVPA is unconstitutional because a person committed under the KSVPA is denied the same rights as a person committed under other civil commitment statutes— that is, his confinement was punitive and more restrictive than that for other persons who are civilly committed because he was detained under the exact same conditions as criminals but without the benefit of bail or other pretrial release. He similarly argues that his confinement in a county jail was unconstitutional because it does not bear any reasonable relationship to the purpose of his confinement and is not the least restrictive means available. Finally, he argues he was denied due process.

As was noted above, Burch incorrectly states that the *Hendricks* Court held the KSVPA "would remain constitutionally valid as long as it remained equal to and provided the same conditions of confinement and rights as all other civil commitments in *Kansas*." The *Hendricks* Court held the KSVPA was nonpunitive because

> "the State has 'disavowed any punitive intent'; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired." 521 U.S. at 368-69.

Burch offers no other authority to support this argument.

Burch also argues that housing him in the county jail has no reasonable relation to the purpose of his confinement because it promotes punitive confinement. He argues use of the jail constituted punishment because a jail can only be a punitive environment and

6

does not provide the treatment the legislature deemed necessary. There is no doubt that permanently housing an SVP in a county jail would be presumptively punitive. *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). However, Burch does not explain how temporarily housing him in the county jail so he could attend his transitional release hearing and possibly achieve transitional release is presumptively punitive. In fact, Burch's brief confinement at the county jail was reasonably related to the purpose of his confinement: to allow him to appear at a trial determining whether his mental condition had changed such that he was eligible for conditional release.

Burch further contends that housing him in the county jail subjected him to more restrictive conditions than a criminal because he was not entitled to bail or release from the county jail prior to trial or sentencing. This argument is flawed because it compares a pretrial criminal confinement— the confinement of someone who has not been convicted—to the confinement of someone who has previously been adjudicated to be an SVP. Instead, a pretrial criminal defendant is more akin to a person awaiting an SVP commitment proceeding. Burch does not identify how his rights were more restricted than his criminal counterparts who, having been convicted, were serving their sentences in the county jail.

Finally, Burch argues that housing him in WCJ was not the least restrictive means available to secure his appearance. He suggests that Osawatomie State Hospital (OSH) was a better alternative, as that facility is considered an extension of LSH. Burch contended that OSH is a 1-hour drive from the Wyandotte County Courthouse, which made it a "feasible" alternative to the jail. Burch's suggestion does not show that there was space available for him in OSH during his transitional release trial or that OSH is a facility that is as secure as LSH.

We hold that Burch's brief stay in WCJ so he could attend his transitional release trial in person did not violate his statutory or constitutional rights. It follows that his

petition did not demonstrate "shocking and intolerable conduct or continuing mistreatment of a constitutional stature" to support his petition for a writ of habeas corpus. We find that the district court properly denied Burch's petition for habeas corpus.

Affirmed.