No. 66,165

STATE OF KANSAS, *Appellant*, v. ROBBIE FITCH, *Appellee*.

(819 P.2d 1225)

Opinion filed October 25, 1991.

*Gene Barrett*, county attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellant.

*Alois R. Bieber*, of Columbus, and *Jim Lawing*, of Wichita, were on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the State of Kansas from an order dismissing the criminal complaint charging Robbie Fitch

with burglary and felony theft. The trial court dismissed the complaint on the grounds that Fitch was denied his constitutional right to a speedy trial.

The State contends the dismissal was premature, was not supported by the facts, and was an abuse of discretion by the trial court.

The complaint was filed on October 12, 1989. Fitch was arrested the same day and immediately released on bond. He has been free on bond since that time. The defendant has never been arraigned nor had a preliminary hearing. The complaint was dismissed at the defendant's request on December 17, 1990.

The speedy trial question in this case must be decided on constitutional grounds. The Kansas statute on speedy trials, K.S.A. 22-3402, does not apply because defendant was never arraigned. See *State v. Rosine*, 233 Kan. 663, 664 P.2d 852 (1983); *State v. Calderon*, 233 Kan. 87, 94, 661 P.2d 781 (1983).

In *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the United States Supreme Court adopted a case-by-case, flexible approach for determining whether an accused's constitutional right to a speedy trial had been violated:

"A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530.

This court has used the *Barker* analysis on many occasions. See, *e.g.*, *State v. Rosine*, 233 Kan. at 666.

Here, the total length of time is 402 days. On the facts of *State v. Goss*, 245 Kan. 189, 193, 777 P.2d 781 (1989), this court stated that "a little over a year between arrest and trial—is not clearly presumptively prejudicial." Fitch's circumstances can be distinguished from *Goss* because the delay here is *not between arrest and trial*. Fitch never received a preliminary hearing, and the trial court found it would be at least one month before a preliminary hearing could be held and several more months before trial

could commence. We are satisfied the delay is presumptively prejudicial, and an examination of the other elements of the *Barker* analysis is warranted.

It should be noted numerous cases have held that longer periods of time than 402 days do not violate the speedy trial right. These cases, however, should not be taken to provide a set period of time. *Barker* mandates an ad hoc approach in which each case is analyzed according to its particular circumstances. In *Barker*, a five-year delay was held not violative. In *State v. Calderon*, 233 Kan. at 94-95, 97, a 13-month delay was held nonviolative. In *State v. Wilson*, 227 Kan. 619, 622, 625, 608 P.2d 1344 (1980), this court held that a three-year delay did not violate the speedy trial right. In *State v. Fink*, 217 Kan. 671, 678, 680, 538 P.2d 1390 (1975), a 14-month delay was held not violative. In *State v. Hunt*, 8 Kan. App. 2d 162, 167-68, 651 P.2d 967 (1982), a one-year delay was held not violative. In all of these cases, the end of the delay is measured by the date of the trial. The alleged speedy trial violation here is based on the delay between the arrest of Fitch and when the trial court dismissed the charges against Fitch. The statute requires that a preliminary hearing be held within 10 days of arrest unless a continuance is granted for good cause. K.S.A. 22-2902(2). This time limitation, however, is directory. Inconsequential delay beyond the 10 days will not require dismissal of the charges. *State v. Weigel*, 228 Kan. 194, 201, 612 P.2d 636 (1980).

Why this case was continued for over a year is not reflected clearly in the record. Fitch was arrested on October 12, 1989, and released on bond immediately. The preliminary hearing was set first for January 31, 1990. By joint motion of the parties, an order for continuance changed the hearing date to February 12, 1990. Then, the record contains four notices of hearing, signed by the county attorney, with hearing dates of March 26, 1990; July 9, 1990; September 12, 1990; and September 24, 1990.

Next, the record contains a notice of and motion for leave to withdraw by defense counsel filed September 24, 1990, giving as a reason that "[d]efendant renders it unreasonably difficult for the lawyer to carry out his employment effectively." New counsel was appointed to represent Fitch on September 27, 1990.

Finally, there is another notice of hearing, signed by the county attorney, with a hearing date of October 29, 1990. Following this are two orders for continuance, reflecting that they were by motion of the State. The hearing dates were to be November 8, 1990, and November 15, 1990. There is an additional notice of hearing, with a hearing date of December 17, 1990, for the court to hear arguments regarding Fitch's motion to dismiss for lack of a speedy trial.

The transcript of the hearing on the motion to dismiss does not explain the reason for the delay. At this hearing, the prosecutor made vague statements that the delay resulted from negotiations over a proposed diversion agreement. The State alleges the defendant repeatedly promised to sign the diversion agreement and then refused to sign it; however, there is no actual testimony supporting the State's allegation, despite the trial court telling the State such testimony was necessary. "Statements of counsel . . . are not evidence any more than are the opening statements of counsel in the presentation of a case before a jury or to the court." *State v. Brown*, 181 Kan. 375, 394, 312 P.2d 832 (1957).

There is no evidence the State deliberately delayed the preliminary hearing (and trial) to thwart Fitch's defense or to gain an advantage. At most, the State was negligent. Negligence is a more neutral reason than the deliberate hampering of the defense and, therefore, is weighed less heavily against the State. See *Fink*, 217 Kan. at 678-79. The trial court reached this conclusion and the record amply supports that finding.

Here, Fitch did not assert his right to a speedy trial until the preliminary hearing was reset and it appeared the preliminary hearing would be held. In *Barker v. Wingo*, 407 U.S. at 532, the United States Supreme Court stated "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." The trial court found Fitch had not asserted his right to a speedy trial, and the record before us amply supports that finding. This factor thus weighs heavily against Fitch.

The trial court found that the defendant had been prejudiced by the delay. Although several arguments are raised here, the

trial court's main thrust is that two witnesses (allegedly prosecution witnesses) might not be locatable.

The purpose of the constitutional right to a speedy trial further defines potential prejudice. This right "is designed to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility the defense of the accused will be impaired." *State v. Mick*, 229 Kan. 157, 159, 621 P.2d 1006 (1981).

Shortly after *Barker* was filed, this court, speaking through Justice Fontron, considered prejudice to a defendant because of delay in *State v. Otero*, 210 Kan. 530, 534-36, 502 P.2d 763 (1972), and stated:

"We pass now to the last of the four factors identified in *Barker* as requiring consideration, namely, prejudice to the defendant. This court has always recognized prejudice as an element of prime importance in speedy trial cases, although it has tended to view prejudice in the context of the accused's ability to defend himself. (*State v. Brooks*, [206 Kan. 418, 479 P.2d 893 (1971)]; *State v. Stanphill*, [206 Kan 612, 481 P.2d 998 (1971)].)

"The record offers no concrete evidence that the long delay in this case hampered the defendant in presenting his defense at the trial. There is nothing to show, for example, that witnesses were dead or could not be located; nothing to suggest that records had been destroyed or had come up missing. Nonetheless we cannot say the element of prejudice is entirely missing in this case. It is increasingly being recognized in this modern age that the impairment of a defendant's capacity to conduct his defense is only one form of prejudice which may flow from long delay in bringing charges to trial. Justice Brennan, concurring in *Dickey v. Florida*, [398 U.S. 30, 38, 26 L. Ed. 2d 26, 90 S. Ct. 1564 (1970),] makes this point clear on page 54 by quoting from *United States v. Mann*, 291 F. Supp. 268, 271 [(S.D.N.Y. 1968)]:

'. . . "[P]rejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, *and the burden of anxiety upon any criminal defendant increases with the passing months and years*" . . . .' (Emphasis supplied.)

. . . .

"The state argues vigorously that prejudice is not to be presumed from a long lapse of time, alone, but that the burden of establishing prejudice rests upon the accused. Statements to the contrary may be found among the cases involving the speedy trial issue. Moreover, it must be kept in mind that the primary burden is on the courts and prosecutors to assure that cases are brought to trial. (See *Barker v. Wingo*, p. 529.)

"But we do not predicate our opinion on a presumption of prejudice arising from lengthy delay, but on a balancing of factors of which prejudice is only one, albeit an important and substantial one. Furthermore, the state's

argument assumes that prejudice is important only as it relates to the ability of an accused to make his defense. We have already demonstrated the error of such an assumption. Mr. Justice White put the matter succinctly in *United States v. Marion*, 404 U.S. 307, 320, 30 L. Ed. 468, 92 S. Ct. 455 [(1971)], where he said:

'. . . [T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. . . .' "

Here, Fitch suffered no oppressive incarceration. Fitch argues, however, that he has suffered "severe emotional distress" and that his job with the railroad company was suspended because of the charges. The railroad company's suspension of Fitch's job was only in part because of the pending criminal charges against him. The burglary and theft charges against Fitch involved railroad property. The railroad company conducted its own investigation and hearing. At the time of the motion to dismiss hearing, Fitch was awaiting an appeal for his termination from the railroad. Fitch did testify that, because of the pending charges, his attorney advised him not to testify at the termination hearing, thus depriving him of the opportunity to present his story.

The trial court found that there was prejudice to the defendant in that certain prosecution witnesses were unable to be located. It was not clear from the testimony at the hearing whether witnesses could be located. Don Grisham, a special agent for the railroad, testified that there were two potential witnesses, John Chapko and Richard Fox. Chapko had told Grisham that he had seen Fitch in the area of the boxcar. Chapko had appeared at a railroad investigation of the theft, and Fitch had had an opportunity to question him. The record does not disclose whether Chapko would testify favorably toward Fitch. Grisham did not know if either of the witnesses were in the area because he had not attempted to contact them. According to Grisham, he never talked with Fox. The police had tried unsuccessfully to locate Fox. Apparently, Fox had moved out of the area. It is not known to what, if anything, Fox would testify.

The trial court found that the State had not made a diligent effort to locate the witnesses and to disclose their location to Fitch. In determining there was prejudice to Fitch, the trial court stated:

"What the prejudice is is that the defendant doesn't know where [the witnesses] are and cannot investigate on their own, interview the witnesses on their own, test [the witnesses'] stories, do their own investigation of the surrounding circumstances and come in to a trial and be ready and prepared to cross-examine or in some other way attack the credibility of those witnesses."

In *State v. Wilson*, 227 Kan. at 624-25, the defendant alleged that the delay caused not only his memory to fade, but also affected the recall of potential alibi witnesses. The defendant claimed that as a result of his fading memory, he was unable to remember sufficient details to locate other witnesses. The court found there was no prejudice to the defendant. Fleeting encounters with potential witnesses caused the defendant's loss of memory, not the three-year delay. The court determined that the defendant could have attempted to contact witnesses when counsel first was appointed for him three years earlier.

Here, as in *Wilson*, the defendant could have attempted to contact witnesses when charges first were filed. There is no showing that the defense tried or wanted to find the witnesses. Further, the defense had the opportunity to question at least one of the witnesses at the railroad hearing. The trial court's conclusion that there was prejudice to Fitch because of the two witnesses is weak.

There is evidence in the record that the defendant appeared three times for his preliminary hearing only to have it postponed. The trial court told the State that it must present evidence to justify the delay, and the State did not present any evidence. (Statements of counsel, as opposed to testimony of counsel, cannot be considered.) Thus, the trial court had to consider that the State offered no evidence to justify the delay and that 14 months had elapsed and the defendant had not had a preliminary hearing. The defendant testified he was present and ready to proceed on three occasions (one of which appears to have been the day the trial court dismissed the case). Based on the record before us, we cannot say the trial court erred in dismissing the case.

Appeal denied.